

**EFI®**

Engineering and Fire
Investigations

634 State Road
Suite K
N. Dartmouth, MA 02747
Tel: 800-326-5811
Fax: 508-991-8824
www.efiinfo.com

# FIRE INVESTIGATION
## Report One and Final

| | |
|---|---|
| Insured: | Nancy McNeil |
| Loss Location: | Medford, Massachusetts |
| Date of Loss: | October 11, 2001 |
| Policy No.: | HO12016316 |
| Claim No.: | Unknown |
| EFI File No.: | 94507-17807 |

Report Date:   November 8, 2001

Prepared For:  Vermont Mutual Ins. Co.
               PO Box 188
               Montpelier, VT 05601

Attention:     Mr. Richard Delaney

*THIS REPORT FURNISHED AS PRIVILEGED AND CONFIDENTIAL TO ADDRESSEE. RELEASE TO ANY OTHER COMPANY, CONCERN,
OR INDIVIDUAL IS SOLELY THE RESPONSIBILITY OF ADDRESSEE*

94507-17807                    November 8, 2001                              Page 1
Insured: Nancy McNeil

## ASSIGNMENT

The assignment was received on October 15, 2001, with instructions to conduct an origin and cause investigation on a fire that occurred at 48-50 Princeton Street, Medford, Massachusetts on October 11, 2001.

## ENCLOSURES

1. Property Description Form.

2. Photographs (57).

3. Second floor diagram.

4. Fire Department incident report.

5. Evidence transfer receipt from the Medford Police Department.

6. Additional materials envelope containing photographs and negatives.

## FIRE SCENE EXAMINATION

The fire scene examination was completed on October 16, 2001. Individuals present during the inspection were Kevin McNeil and John Doyle, both identifying themselves as tenants of the second-floor apartment. Mr. McNeil is also the son of the named insured.

Conditions affecting the overall fire scene examination were extensive overhaul as completed by the Medford Fire Department, as well as a municipal and state fire scene examination. A slight alteration to the scene included the removal of a two-slice bread toaster from the second-floor kitchen, which I subsequently retained possession of from the Medford Police Department. There were no significant changes or adverse conditions that impeded my ability to determine the origin and cause of this fire.

The fire scene examination began with an inspection of the exterior surrounding grounds and building. This revealed that fire had vented out a second-floor window at the south corner of the building. This was later determined to be a window for the second-floor kitchen. The fire communicated up and began burning the soffit and eave line above. Smoke and heat was observed above many of the other second-floor and third-floor windows.

The fire debris located outside was examined but no potential ignition sources were found. All that was in this pile were heavily burned structural components and contents of the building. There was no evidence to indicate that the fire had its origin on the exterior of the building.

94507-17807                       November 8, 2001                                Page 2
Insured: Nancy McNeil

The exterior doors, particularly those entering the second floor apartment were all examined but no unusual tool marks or other damage was observed. The second-floor apartment was occupied by Mr. Doyle when this fire occurred, therefore making security a non-issue.

The interior fire scene examination then commenced beginning at the area of least damage, which was in the basement, and concluded in the area of lowest and most significant fire burning and fire damage, which was located in the second-floor kitchen.

The electrical distribution panel that serviced the second-floor apartment was located in the basement. The number 9, 11 and 17 breakers were all tripped. All others were in the on position. The only tripped breaker that was marked was the number 17 that serviced the attic. There were no signs of electrical malfunction or overheating. The panel was subsequently eliminated as being the cause of this fire loss.

The gas-fired water heaters and heating systems were all examined but were undamaged. They still appeared to be serviceable and were not in any way related to the cause of this fire.

The gas meters were also still intact. There were no indications of leakage or tampering on any of the couplings or fittings. Further, there were no indications that the gas service was in any way related to the cause of this fire, nor did it contribute to its growth and development.

The first-floor apartment was occupied by a tenant when this fire occurred. Only water damage was observed at this level.

The insured, Nancy McNeil, occupied the attic level apartment. Extensive damage occurred in many of these rooms at the rear of the apartment. Heavy burning was observed within the walls and within the various void spaces at the rear of the apartment.

Examination of the third-floor kitchen revealed that the floor had partially burned away. The joists were deeply charred on their bottom surfaces, as was the remaining floorboard. The burn patterns in the third floor indicated that the fire had communicated vertically from the second floor via the openings in the wall construction and upward through the floor as well. There were no indications that the fire had its origin in the attic level apartment.

The second-floor apartment was inspected next, which was occupied by the insured's son, Kevin McNeil, and Mr. John Doyle.

The front of the apartment, which is the northeast side, contained a small office and a living room. Extensive smoke damage and soot staining was observed on the walls and ceiling. The damage was slightly heavier in the dining room. Here the wall at and adjacent to the door entering the kitchen was severely scorched and soot covered. These patterns indicated that the products of combustion had communicated from the direction of the kitchen.

94507-17807                    November 8, 2001                                Page 3
Insured: Nancy McNeil

The northwest side of the apartment contained two bedrooms and a bathroom. A small hallway interconnected these three rooms. Smoke and heat damage as observed at the doorways of these three rooms. In the hallway, the kitchen doorframe was severely burned and scorched. The charring was more severe on the kitchen side. Further, there were no areas of concentrated or unique damage that would indicate that the fire had its origin in any of these three rooms or in the small hallway.

The examination of the second floor then continued to the kitchen where the most sustained combustion had taken place. The greatest damage was towards the north corner. Lesser damage was observed away from this area.

Examination of all branch circuit wiring and related junction boxes and light fixtures revealed that they were scorched and covered with soot. The outer faceplate of an outlet located in the wall at the extreme south corner was severely burned on its exterior surface only. None of the structural wiring exhibited any evidence of internal arcing, beading or excessive overheating. The structural wiring in the building was subsequently eliminated as being the cause of this loss.

Analysis of the burn patterns in the kitchen revealed that the ceiling was damaged the greatest directly above the extreme north corner. The bottom surfaces of the joists and the lath were deeply charred. The header at the top of the southeast wall was excessively charred at the south corner as well. The overhead cabinets were partially consumed.

Examination of the damage on the floor revealed that it was minimal as that compared to on top of the countertop. The doors on the floor cabinets were moderately but consistently burned, as was the base of a partition wall and the floor surface itself. All indications were that this light to moderate damage at floor level was due to burning debris that had collapsed and fallen to the floor.

As stated, the greatest damage was at the countertop at the extreme south corner of the kitchen. The southeast wall here was severely burned in a "V"-pattern, the apex of which was immediately to the right side of the lath exterior window and the microwave, which was tucked into the extreme corner. The wall immediately above and behind the countertop was deeply charred. The splashboard was partially incinerated. The right side of the window frame was deeply charred, also indicating that the fire communicated from immediately to its right side.

The microwave oven that was tucked into the extreme corner was burned on its left side, causing severe oxidation and discoloration to its exterior surface. The internal wiring, right side and back side of the microwave were much lesser damaged. There were no indications of an internal electrical failure inside the microwave.

94507-17807                    November 8, 2001                              Page 4
Insured: Nancy McNeil

Located directly between the microwave and the right side of the last window was a two-slice bread toaster. It had been plugged into an outlet behind the microwave oven. As stated, this outlet was only damaged on its exterior surface and did not malfunction internally.

Also as previously stated, the two-slice bread toaster had been removed and secured as evidence by the Medford Police Detective Bureau. Some of the remaining debris on the countertop was carefully sifted and cleared away. This further detailed that the aforementioned burn patterns all indicated that the fire's origin was at the toaster.

A miscellaneous power cord was located towards the kitchen sink. The insulation had burned away but there was no evidence of excessive overheating or arcing on these conductors. I was unable to positively identify what appliance this power cord serviced.

A full examination of the area of origin revealed no other potential ignition sources other than the bread toaster. Use of a portable hydrocarbon detector produced negative results. There were no indications that this fire was incendiary in nature.

At the conclusion of this fire scene examination, the outlet from the extreme south corner where the bread toaster was plugged in was tagged as evidence and removed from the scene. Also tagged and removed were the unidentified remains of the aforementioned power cord located on the countertop near the sink.

I traveled to the Medford Police Department Headquarters building, Detective Bureau and met with and interviewed Detective Paul Mackowski. He released the remains of the two-slice bread toaster to my possession and I was able to subsequently examine this appliance.

Inspection of the toaster revealed that most of its plastic housing had been melted away during the fire. Some of the plastic remained at the front and left side. I could not find any visible nomenclature that identified the manufacturer or serial or model number of this toaster. The toaster was in no way dismantled during this inspection.

Closer inspection of the toaster revealed that some type of towel or cloth material had been burned to the sides of the toaster. This was reportedly done while the tenant was attempting to extinguish the fire in the toaster. Moderate to heavy oxidation was observed at and around the two slots where the bread would inserted into the appliance. The remains of a severely burned Pop-Tart were observed in one of the two slice bays.

The examination of the vertical slide mechanism that activates the toaster revealed that it appeared to have possibly been in the on position. That being the slide mechanism was all the way down. To activate this toaster, the external knob would be pushed down and then the toaster locks in place until the pastry is finished heating. It then pops up. As stated, the slide mechanism appeared to still be in the down position.

94507-17807  
Insured: Nancy McNeil

November 8, 2001

Page 5

The power cord for the toaster was intact with only some various areas being burned, exposing the conductors. The spade connectors were intact and there were no indications of arcing or beading.

## INVESTIGATION

In speaking with Kevin McNeil, he identified himself as one of the occupants of the second-floor apartment. He resides there with Mr. John Doyle. Kevin stated that his mother owns the building and that he has lived there for the past 32 years, which is since he was born. His mother has lived there for the past 36 years.

Mr. McNeil stated that is friend John J. Doyle has lived in one of the second-floor bedrooms for the past 14 months. He pays $500 in rent, which includes utilities.

Mr. McNeil stated that he was not home when this fire occurred. He left some time around 8 a.m. for work. John had been up since the early morning hours working on a work project. Kevin believes that John was most likely in his office when he left. When Kevin left, nothing had been cooked in the kitchen and none of the appliances had been utilized that morning.

Kevin McNeil stated that he owned the two-slice bread toaster that was in the second-floor kitchen. He received it from a friend approximately five years ago as a gift. He did not know the manufacturer of it. He further indicated that this friend has subsequently passed away. It had been operating without problems ever since he purchased it.

Mr. McNeil further indicated that all of the other kitchen appliances were operating without problems. There have been no electrical or heating system problems in the building as well.

Kevin McNeil did state that Mr. Doyle is a recovering alcoholic and is currently being treated for depression. Kevin indicated that Mr. Doyle's medication for his depression treatment makes him very drowsy and he often sleeps for many hours at a time, even during the day.

In speaking with Nancy McNeil, she identified herself as the owner of the building and as the third floor occupant. She was home on the morning that this fire occurred and began smelling smoke. She knew that the problem was not in her apartment so she ran downstairs to the second-floor apartment. She saw heavier smoke inside the second-floor apartment and ran in as far as the kitchen. Mrs. McNeil stated that once she entered the kitchen she could see fire coming out and around the bread toaster, which is at the extreme corner. At this point, she did not see John Doyle. She yelled very loud at least a time or two for John but he did not answer. Soon thereafter, Mr. Doyle showed up behind her and asked if she had a fire extinguisher. She said yes so she ran upstairs to get it and Mr. Doyle stayed in the apartment.

94507-17807                    November 8, 2001                              Page 6
Insured: Nancy McNeil

Mrs. McNeil stated that Mr. Doyle attempted to utilize the fire extinguisher to put out the fire but could not do so. Mrs. McNeil stated that she had already called 911 to report the fire and at this time she needed to get out of the building. John Doyle followed her soon thereafter.

Mrs. McNeil stated that she did hear the smoke detectors in the building sounding. However, she is unclear at what point they activated.

Mrs. McNeil stated that she is unaware of any electrical problems or heating system problems in this building. Her son and John Doyle have not complained of any problems on the second floor that may be related to this fire.

In speaking with John J. Doyle, he identified himself as one of the second-floor tenants. He has been there for little more than a year and he has known Kevin McNeil for several years longer than that. He does have insurance for his personal belongings with New London County Mutual Insurance Company.

Mr. Doyle stated that he is a self-employed personal financial planner. He does not have a business phone but did give his cell phone number as 617-504-3201.

Mr. Doyle stated that he had been up since about 1 or 2 a.m. that morning. He was working on a project for a presentation that he needed to do on the day that this fire occurred. He believes he got most of his work done by about 8 a.m. He then felt hungry so he went in and put a strawberry Pop-Tart in the bread toaster located at the countertop at the corner of the kitchen.

Mr. Doyle stated that after turning on the toaster, he then went back into his office to do a little bit more work. He stated that after several minutes he was still working in his office when he heard a pop. He stated that he ran into the kitchen and saw fire coming out of the toaster oven. He then stated that he ran upstairs and told Mrs. McNeil and got a fire extinguisher from her. He did indicate that he was unsuccessful in using the extinguisher on the fire.

Mr. Doyle stated that he then tried wrapping the toaster in a towel and was possibly going to try to put it into the sink. He was unsure whether or not he moved the toaster at all but he stated that the fire was too severe at this time so he could not extinguish it.

Mr. Doyle stated that he had not fallen asleep after putting the Pop-Tart in the bread toaster. He did indicate that he was a recovering alcoholic but refused to answer questions on whether or not he was being treated for depression or any of the related medications that may be involved with that treatment.

Mr. Doyle stated that he was not aware of any problems with the bread toaster or any other kitchen appliance.

94507-17807   November 8, 2001   Page 7
Insured: Nancy McNeil

In speaking with Lieutenant Robert Delafano of the Medford Fire Department, Fire Investigation Unit, he identified himself as one of the investigating officers of this fire. He believes that the fire was accidental in nature, having originated at the toaster in the second floor kitchen. Lt. Delafano stated that he found no indications that this fire was intentionally set or accelerated.

As stated, I spoke with Detective Paul Mackowski of the Medford Police Department, Detective Bureau. He had possession of the toaster from the second-floor kitchen and subsequently turned it over to the possession of EFI.

Detective Mackowski stated that he extensively interviewed John Doyle regarding this incident. He found no indications that Mr. Doyle was in any way intentionally involved with this fire. They did locate the toaster near the extreme south corner but it did apparently appear to have been wrapped in a towel during a failed extinguishment attempt.

## DETERMINATION OF ORIGIN AND CAUSE

The origin of this fire has been determined to be in the second-floor kitchen. The origin has more specifically been determined to be at the countertop at the extreme south corner, directly where the bread toaster was located.

The cause of this fire has been determined to be the ignition of the Pop-Tart that was being toaster inside the bread toaster. The fire subsequently caused ignition of nearby combustibles such as the wall and overhead cabinet.

## RECOMMENDATIONS AND/OR COMMENTS

It is recommended that an electrical engineer examine the toaster in an effort to ascertain if an internal mechanical or electrical malfunction contributed to the cause of this fire. I cannot say with certainty whether or not the toaster jammed, causing the Pop-Tart to overheat and ignite.

Warnings on the sides of several Kellogg's Pop-Tart boxes indicate that Pop-Tarts should not be left cooking in a toaster unattended as a potential risk for fire does exist.

Adjuster Bob Smith of Butterworth and O'Toole has been advised of the status of this investigation.

94507-17807  November 8, 2001  Page 8
Insured: Nancy McNeil

This case file will be closed but can be reopened upon receiving authorization to do so.

JEFFREY K. LOWE
Investigator
508-886-2043

File Closed

JKL/lpm

Enclosures

cc: Richard D. Dietzman
    District Manager

94507-17807  November 8, 2001  Page 9
Insured: Nancy McNeil

## PHOTO DESCRIPTION

1. Front view of the building.
2. Rear view of the building.
3. The debris outside.
4. The fire that vented out of the kitchen window of the second floor.
5. The water heaters.
6. The heating systems.
7. The gas meters.
8. The electrical panels.
9. The electrical panels for the second floor.
10. Close-up view of the second-floor panel.
11. The legend for the second-floor electrical panel.
12. A smoke detector on the third-floor floor.
13. The third-floor kitchen area.
14. The void spaces in the third floor.
15. The void space in the third floor attic area.
16. The void spaces in the third floor attic.
17. A hardwired smoke detector on the third floor ceiling.
18. The third-floor kitchen.
19. The wall behind the bathroom sink.
20. A third-floor storage room and void space.
21. The second-floor office.

94507-17807  
Insured: Nancy McNeil

November 8, 2001

Page 10

22. The living room.

23. The dining room.

24. The dining room.

25. The bathroom.

26. A bedroom.

27. The second bedroom.

28. The hallway.

29. The kitchen.

30. The kitchen.

31. The kitchen.

32. The kitchen.

33. The ceiling.

34. The ceiling above the south corner.

35. The floor.

36. The floor.

37. The floor cabinet doors.

38. The heavy charring on the joists above the south corner of the kitchen.

39. The south corner of the kitchen.

40. The south corner.

41. The countertop at the south corner.

42. The window frame at the south corner.

43. The debris on the countertop at the south corner.

44. The microwave oven.

94507-17807                     November 8, 2001                                   Page 11
Insured: Nancy McNeil

45. The outlet where the toaster was plugged in.

46. After debris removal at the south corner on the countertop.

47. The heavy burning to the wall behind the toaster.

48. The direct location of the toaster and the wall behind it.

49. The back surface of the microwave oven.

50. The unknown power cord found near the sink.

51. The remains of the toaster.

52. The towel burned into the side of the toaster.

53. The metal siding of the toaster.

54. The top side of the toaster and the power cord.

55. The plastic housing on the opposite side of the toaster and the towel burned to its side.

56. The top of the bread toaster.

57. The Pop-Tart found in one of the bays of the two-slice toaster.

Enclosure 1



**EFI**
Engineering and Fire
Investigations

# Property Description

Insured  Nancy McNeil                          EFI No.  94507-17807
Street   48-50 Princeton St    City  Medford            State  MA
Occupancy  ☒ Dwelling   ☐ Business   ☐ Unoccupied   ☒ Other   2 Family
☒ Owner Occupied      ☒ Tenant occupied      Approximate age _____ years
Building construction   ☒ Wood   ☐ Masonry   ☐ Metal   ☐ Other
Roofing material        ☒ Composition material   ☐ Metal   ☐ Tile   ☐ Wood
                        ☐ Tar and gravel         ☐ Other
Number of stories  2.5   Number of rooms _____   Number of baths _____
Foundation  ☒ Basement   ☐ Concrete slab   ☐ Pier and beam   ☐ Crawl space
Heating     ☒ Natural gas   ☐ Propane gas   ☐ Electric   ☐ Other  Fuel Oil
Air conditioning  ☐ Natural gas   ☐ Propane gas   ☐ Electric   ☐ Other
Electrical service connected during fire   ☒ Yes   ☐ No   ☐ Unknown
Alarm system  ☒ Yes   ☐ No   Type  Smoke   ☒ Local   ☐ Monitored
Garage  ☒ None   ☐ Attached   ☐ Detached   Approximate size _____
Outbuildings on premises   ☐ Yes   ☒ No   ☐ Damaged   ☐ Undamaged
Outside conditions   ☒ Normal   ☐ Unkempt   ☐ Well groomed   ☐ Other
General conditions   ☐ Excellent   ☒ Average   ☐ Poor   ☐ Other
Fire protection   ☐ Unknown   ☐ Volunteer   ☒ Paid   ☐ Paid & Volunteer
Department  Medford Fire            Distance to Station _____
Completed during examination   ☒ Diagram   ☐ Video   ☒ Photographs
                               ☒ Measurements   ☒ Interviews
Date examination began  10/16/01   Date examination completed  10/16/01



Nancy McNeil, 48-50 Princeton Street, Medford, Massachusetts

ENCLOSURE 3

EFI No.: 94507-17807

Second Floor



◯ -Photo Direction   ▨ -Point of Origin

Prepared by: Jeffrey K. Lowe
October 26, 2001
Not to Scale



# MASSACHUSETTS FIRE INCIDENT REPORT
DEPARTMENT OF FIRE SERVICES — OFFICE OF THE STATE FIRE MARSHAL
P.O. Box 1025, State Road, Stow, Massachusetts 01775

ENCLOSURE 4

FORM FP-32

**A** — FDID#: 10 / 17176   DEPARTMENT: Midford

**B** — INCIDENT #: 32193   EXPOSURE #: 0.0   DATE: 10-11-01   DAY OF WEEK: 5 (Thu)   ALARM TIME: 0911   ARRIVAL TIME: 0913   BACK IN SERVICE: 1256

SITUATION FOUND: 11 Structure fire [code 11]
ACTION TAKEN: 1 Extinguishment
MUTUAL AID: 1 Rec'd

**C** — FIXED PROPERTY USE (Occupancy): Two Family [414]   IGNITION FACTOR: Operational Deficiency [20]

**D** — CORRECT ADDRESS: 50 Princeton St. Med. MA   ZIP CODE: 02155   CENSUS TRACT: 3396

**E** — OCCUPANT NAME: McNeil, Kevin – Doyle, Joy   TELEPHONE: 1-781-393-5610

**F** — OWNER NAME: McNeil, Nancy   ADDRESS: 50 Princeton St. Med. MA   TELEPHONE: 1-781-396-4162

**G** — METHOD OF ALARM: 1 Telephone direct
CO. INSP. DISTRICT: 005   SHIFT: 2   NO. ALARMS: 1
NO. FIRE PERSONNEL RESPONDED: 46
NO. ENGINES RESPONDED: 10
NO. AERIAL APPARATUS RESPONDED: 3
NO. TANKERS RESPONDED: 3
NO. OTHER VEHICLES RESPONDED: 3
HAZARDOUS MATERIAL PRESENT? No
Special Equipment Used?: 3

**I** — FIRE SERVICE: NUMBER OF INJURIES: 0   NUMBER OF FATALITIES: 0   OTHER: NUMBER OF INJURIES: 1   NUMBER OF FATALITIES: 0   RESCUES: 0

**J** — MOBILE PROPERTY TYPE: 08 None   ESTIMATED TOTAL DOLLAR LOSS: $175,000   INSURANCE CO.: Vermont Mutual

**K** — COMPLEX: Dwelling   AREA OF ORIGIN: Kitchen [41]   EQUIPMENT INVOLVED IN IGNITION: Cooking [24]

**L** — FORM OF HEAT IGNITION: Electrical Appliance [29]   FORM OF MATERIAL IGNITED: Multiple [97]   TYPE OF MATERIAL IGNITED: Multiple [97]

**M** — METHOD OF EXTINGUISHMENT: 6 Pre-connect hose/hydrant or draft standpipe
LEVEL OF FIRE ORIGIN: 3 (20 to 29 feet)
NUMBER OF STORIES: 4 (5 to 6 stories)
CONSTRUCTION TYPE: 7 Protected wood frame

**N** — EXTENT OF DAMAGE: FLAME: 6   SMOKE: 6
9 No Damage of this type (Smoke damage only)

**P** — DETECTOR PERFORMANCE: 8 No detectors present (N/A)
SPRINKLER PERFORMANCE: 1

**Q** — IF SMOKE SPREAD BEYOND ROOM OF ORIGIN, FORM OF MATERIAL GENERATING MOST SMOKE: Structural Materials, Multiple [97]   TYPE OF MATERIAL GENERATING MOST SMOKE: Multiple [97]

**R** — WEATHER CONDITIONS: Clear, Sunny, 70°
AVENUE OF SMOKE TRAVEL: 5 Opening in construction

Entries contained in this report are intended for the sole use of the State Fire Marshal. Estimations and evaluations made herein represent "most likely" and "most probable" cause and effect. Any representation as to the validity or accuracy of recorded conditions outside the State

ENCLOSURE 5



# MEDFORD POLICE

100 MAIN STREET
MEDFORD, MASSACHUSETTS 02155
EMERGENCY: 911
                (781) 395-1212
BUSINESS: (781) 391-6404
FAX:         (781) 395-5177

LEO A. SACCO, JR.
CHIEF OF POLICE

October 16, 2001

Received from Det. Paul Mackowski, one toaster removed from the kitchen of 50 Princeton St., Medford, MA on 10/11/01.

_Jeffrey K. Lowe_ 10-10-01
Jeffrey K. Lowe, Fire Investigator
EFI
634 State Road
Suite K
Dartmouth, MA 02747
800-326-5811

_Det. Paul J. Mackowski_
Det. Paul J. Mackowski